UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

DANIEL ZACHARY HARPER,

              Plaintiff,

      v.

MICHAEL TAYLOR JR., J. CAREY, J. FRAZIER,
T. BURCHARD, D. PEDRO, MARK NOOTH, J.
ROBINSON, N. SOBOTTA, and ERIKA SAGE,

              Defendants.

Case No. 2:24-cv-00302-YY

OPINION AND ORDER

YOU, Magistrate Judge.

      Plaintiff Daniel Zachary Harper, who is currently incarcerated by the Oregon Department of Corrections ("ODOC") and is representing himself in this matter, brings this civil rights action under 42 U.S.C. § 1983. The relevant facts are straightforward and generally undisputed. In March of 2023, defendant Michael Taylor was working as a corrections officer in the Mental Health Unit at Eastern Oregon Correctional Institution ("EOCI"). In response to plaintiff's request for a roll of toilet paper, Taylor said, "I just took a piss, give me a couple minutes to let my dick cool off." Plaintiff filed a grievance regarding Taylor's statement and reported the statement to the "PREA Hotline"[1] as sexual harassment. Prison staff investigated plaintiff's complaint and Taylor admitted to making the statement, but the investigation concluded that the

---

[1] "PREA" stands for the Prison Rape Elimination Act.

statement did not meet the standard for "Staff Sexual Harassment" or "Staff Sexual Abuse" as plaintiff had asserted. Plaintiff is not satisfied with that result and thus filed this suit.

Plaintiff asserts claims falling into two general categories. First, he asserts an Eighth Amendment claim against Taylor based on the alleged sexual harassment. Compl. ¶¶ 4, 26, 55, ECF 2. Plaintiff then asserts a supervisory liability claim against defendants J. Carey, J. Frazier, T. Burchard, D. Pedro, Mark Nooth, J. Robinson, and Erika Sage[2] for "failing to correct . . . Taylor's illegal actions after they were personally made aware and became involved," thus allegedly violating plaintiff's Eighth Amendment Rights. *Id.* ¶ 56. Second, plaintiff asserts two First Amendment claims: 1) that defendants Taylor, Burchard, and Carey retaliated against plaintiff after he reported Taylor's allegedly "illegal actions" in March of 2023, *id.* ¶ 57; and 2) that defendant N. Sobotta, a grievance coordinator at EOCI, prevented plaintiff from appealing one of his grievances regarding the Taylor incident and the EOCI investigation into it. *Id.* ¶ 58.

Currently pending is defendants' motion for summary judgment, ECF 30. As explained more fully below, there are numerous reasons why plaintiff's claims fail. Plaintiff did not properly exhaust the available administrative remedies for many of his claims, as required by the Prison Litigation Reform Act ("PLRA"). There are some claims, specifically the Eighth Amendment claims against Taylor and Carey that are exhausted, and the parties dispute whether

---

[2] Plaintiff alleges that defendant Frazier was "employed as a captain of the ODOC at EOCI," defendant Burchard was a "Housing Lieutenant of the ODOC at EOCI," defendant Pedro was a Superintendent of EOCI, defendant Nooth was the Institutions Administrator at ODOC, defendant Robinson was a lieutenant at EOCI, and defendant Sage was the Agency PREA Coordinator for ODOC. Compl. ¶¶ 4–12, ECF 2. Largely, those allegations are confirmed by declarations filed by Burchard, Carey, and Robinson, *see* ECF 31, 32, 33, though not all of the defendants' various roles at ODOC or EOCI are directly supported by evidence in the record. The particular title each of these defendants is not necessary to resolve the currently pending motion; there is no dispute that all the defendants work for either EOCI or ODOC, and thus the court assumes generally that plaintiff's allegations describing defendants' employment roles are accurate.

plaintiff properly exhausted other claims. But even setting aside any problems with exhaustion, the facts in the record are not sufficient to sustain any of plaintiff's claims. Taylor's comment, although crass, is not an Eighth Amendment violation, nor did any of the other defendants violate plaintiff's Eighth Amendment rights in their investigation into plaintiff's complaint about Taylor, despite plaintiff's unhappiness with the ultimate finding that Taylor's comment did not constitute "sexual harassment." Regarding plaintiff's First Amendment claims, there is no evidence in the record that Carey, Taylor, Burchard, or Sobotta took any adverse action against plaintiff because of plaintiff's complaint about Taylor. Therefore, defendants are entitled to summary judgment on all of plaintiff's claims.

## I.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324 (citing FED. R. CIV. P. 56(e)).

The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are

resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## II.    PLRA Exhaustion

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion under the PLRA is mandatory. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). The purposes of the exhaustion requirement are two-fold: to protect administrative agency authority, by providing agencies the opportunity to correct their mistakes before being brought into federal court, and by encouraging adherence to agency procedures; and to promote efficiency because resolution by an agency is typically faster and more economical than litigation in federal court. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

"Failure to exhaust under the PLRA is 'an affirmative defense the defendant must plead and prove.' " *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock,* 549 U.S. 199, 204 (2007)). The court employs a burden-shifting framework to analyze administrative exhaustion under the PLRA. First, the defendant must "prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). Next, "the burden shifts to the plaintiff, who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him[.]" *Id.* This can include "showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id.* An inmate need only exhaust those remedies that are available "as a practical matter,"

meaning that the remedy must be "capable of use; at hand." *Brown*, 422 F.3d at 937. Although

the burden of proof remains with the defendant, the defendant is entitled to summary judgment if

undisputed evidence viewed in the light most favorable to the prisoner shows a failure to

exhaust. *Albino*, 747 F.3d at 1166, 1172.

### III.    Plaintiff's Grievances

The record contains two grievances from plaintiff. First, plaintiff filed grievance EOCI-

2023-03-017 on March 13, 2023 ("March 2023 Grievance").[3] Plaintiff wrote:

> The above officer at the above date and time [defendant Taylor on
> March 11, 2023 at 12:03 p.m.] when I needed a new roll of toilet
> paper yelled "Jesus Christ, I just walked in the door. I just took a
> piss, let my dick cool off first." I was not trying to do anything
> with this, or anybody's dick." (sic) Dozens witnessed this. This is
> not acceptable. 291-042-0220(2) describes how mental health unit
> staff are supposed to be treating me. Also there's the Code of
> Ethics, Conduct and 291-109-0120. I'm collecting declarations.[4]

Carey responded to plaintiff's first grievance on April 12, 2023, as follows:

> Your allegation was investigated. The staff in question was
> interviewed. The investigation concluded that this was not Staff
> Sexual Abuse and did not meet the rule for Staff Sexual
> Harassment, however, appropriate action was taken.[5]

Plaintiff filed an initial appeal on April 17, 2023, and wrote:

> I'm appealing because it is blatant and confirmed sexual abuse and
> sexual harassment. It is not O.K., not even close, that J. Carey is
> being so complicant (sic) in this so he'll be joining Taylor as a
> codefendant. Zero tolerance means zero tolerance. And I've been
> retaliated against since reporting the sexual harassment. So much
> for PREA compli[a]nce.[6]

---

[3] Villers Decl., Ex. 6 at 12, ECF 34.
[4] *Id.* (some capitalization modified).
[5] *Id.* at 10.
[6] *Id.* at 8 (some capitalization and formatting omitted).

Superintendent Pedro responded to the initial appeal on April 27, 2023; he wrote that Carey had "conduct[ed] himself in a professional and respectful manner" and that Carey's conduct did not violate the Code of Conduct.[7] Plaintiff filed a second-level appeal on May 5, 2023; he again asserted that the investigation had confirmed that Taylor had indeed made the statement and he was not satisfied with Carey's response to his grievance, and he wrote Burchard "supposedly investigated [the Taylor incident] yet did not bother talking with me – likely because he also happens to be the one who retaliated against me!"[8] Nooth responded to plaintiff's second-level appeal on May 19, 2023, and wrote that he "concur[red] with the response [plaintiff] received from Superintendent D. Pedro," and that the administrative review process for plaintiff's March 2023 Grievance was complete.[9]

Plaintiff then filed a second grievance, EOCI-2023-05-053, on May 22, 2023 ("May 2023 Grievance"), and wrote as follows:

> Lt. Carey, I feel, does not follow ODOC's policy which is that: "Oregon Department of Corrections has a zero tolerance policy towards sexual abuse and sexual harassment of incarcerated persons" and instead said to me on 5-12-23 there has to be more than one instance of sexual harassment to be sexual harassment, so the "zero tolerance" policy is actually a par-2 when the first one is free or doesn't count. I strongly disagree. All PREA literature I've read contradicts Lt. Carey (see attached). This conversation took place in the East Sgt. Office after I'd earlier reported retaliation to Sgt. Perkins subsequent to the investigation Lt. Carey did not perform in grievance #ECO 2023 03 017. My position is that had Lt. Carey actually investigated the other grievance, and at a minimum even spoke with me, he would have learned that there has been two separate and distinct sexual harrasments by M. Taylor directed at me and that other AICs have been victim(s) of his harassment(s). 4 others I can name.

> Lt. Carey appears to be more concerned with denying and covering up what is supposed to be a zero tolerance issues; and that

---

[7] *Id.* at 6.
[8] *Id.* at 2.
[9] *Id.* at 1.

concerns me, especially since the underlying issue I initially
grieved had already been confirmed per Lt. Robinson before
Carey's denial of it, I've experience retaliation and, although not
sexually charged, I've been further harassed by M. Taylor since the
misconduct was confirmed.[10]

Carey responded to plaintiff's second grievance in August of 2023 as follows:

You made an allegation in writing on March 11, 2023, using the
PREA Grievance process. Your allegation was on a staff member.
The allegation was investigated, so it was taken seriously. The staff
member was interviewed. Your allegation of Staff Sexual Abuse
did not meet the definition and was unfounded. Your allegation of
staff Sexual Harassment at that time also did not meet the
definition . . . . The reason for the interview on May 12, 2023, was
to assess your report of Retaliation. You were called down to the
East Sergeants office for a Retaliation Assessment. If you are
being interviewed for Retaliation, then your allegations was
documented, and it was taken seriously.[11]

There is no evidence that plaintiff successfully appealed the response to his second grievance

EOCI-2023-05-053. On September 4, 2023, plaintiff submitted a grievance appeal form, but the

space where the "Grievance #" is supposed to appear is crossed out.[12] It does seem, as

defendants assert, that the grievance number ends in "AA," which would indicate a second-level

grievance appeal.[13] In defendants' electronic records regarding plaintiff's March 2023 Grievance

and appeal, which by that point had already been resolved through its second level of appeal,

there is a note dated September 5, 2023, that states "received additional packet/returned

unprocessed."[14] This grievance appeal form was returned to plaintiff as "unprocessed" on

September 7, 2023.[15]

---

[10] *Id.*, Ex. 7 at 2–3.
[11] *Id.* at 1.
[12] *Id.*, Ex. 8 at 1; *id.* ¶ 38.
[13] *Id.*
[14] *Id.* ¶ 39.
[15] *Id.*, Ex. 8 at 1. Notably, plaintiff had already filed a second-level appeal for the March 2023
Grievance, and this "new" grievance appeal form was received more than 14 days after the
second-level appeal response for the March 2023 Grievance. *See id.*, Ex. 6 at 1.

Plaintiff asserts that he submitted an "AIC Communication Form" or "kite" on September 7, 2023, stating that "The appeal is for grievance ECOI 2023 05 053. Please process it."[16] There is no other evidence in the record showing that plaintiff made any other effort to appeal the initial response to his May 2023 Grievance.

## IV.    Eighth Amendment Claims

As mentioned above, plaintiff asserts two different Eighth Amendment claims based on (1) Taylor's alleged sexual harassment of plaintiff, and (2) the alleged failure of Carey, Frazier, Burchard, Pedro, Nooth, Robinson, and Sage to adequately investigate or take corrective action against Taylor. *See* Resp. 4 (asserting that these defendants "ignored" Taylor's conduct and "den[ied] the misconduct happened").

Defendants concede that plaintiff exhausted his Eighth Amendment claims against Taylor and against Carey. *See* Mot. Summ. J. 4–5, ECF 30 (describing plaintiff's first grievance regarding Taylor and two subsequent appeals)[17]; *see also id.* at 9 n.3 ("Defendants acknowledge that because the responses [to plaintiff's first grievance] addressed the otherwise improperly raised allegations as to [d]efendant Carey and the underlying investigation, claims related to that conduct are considered exhausted.") (citing *Reyes v. Smith*, 810 F.3d 654, 657)). The analysis below thus focuses first on plaintiff's Eighth Amendment claims against Taylor and Carey, and then turns to the analysis of plaintiff's claims against the other named defendants.

---

[16] *Id.*, Ex. 9 at 1; *see also* Compl. ¶ 49, ECF 2. Plaintiff's complaint is "verified" and therefore "may be used as an opposing affidavit under Rule 56" so long as it is "based on personal knowledge and set[s] forth specific facts admissible in evidence." *Martin v. Dewsnup*, No. 6:11-cv-06420-AC, 2015 WL 13730889, at *1 (D. Or. Dec. 30, 2015) (citing FED. R. CIV. P. 56, *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995)).

[17] *See also* Villers Decl., Ex. 6 at 1, ECF 34 (letter from Nooth responding to plaintiff's second-level grievance stating that "[t]his concludes the grievance review process for this matter").

### A.    Defendant Taylor

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Jordan v. Gardner,* 986 F.2d 1521, 1525 (9th Cir.1993) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)) (simplified). "The alleged pain may be physical or psychological," but an inmate "must objectively show that he was deprived of something sufficiently serious." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (simplified).

Here, Taylor's behavior "does not rise to the level of severe psychological pain required to state an Eighth Amendment claim." *Id.* Taylor's comment, as defendants have recognized, was unprofessional and offensive, *see* Mot. Summ. J. 11, 13, ECF 30, but does not rise to the level of other conduct that the Ninth Circuit has found did not violate the Eighth Amendment. In *Watison*, for instance, plaintiff alleged that a correctional officer entered his cell while the plaintiff was on the toilet and began to search the cell. 668 F.3d at 1112. After the plaintiff asked the officer to leave, the officer approached him while he was still on the toilet, rubbed his thigh against the plaintiff's thigh, "began smiling in a sexual contact [sic]," and then "left the cell laughing." *Id.* The Ninth Circuit held that the officer's "alleged wrongdoing was not objectively harmful enough to establish" an Eight Amendment violation. *Id.* at 1114 (simplified). Where the conduct in *Watison* did not constitute an Eighth Amendment, certainly Taylor's crass comment is not objectively harmful enough to sustain an Eighth Amendment claim.[18] *See id.* ("[T]he

---

[18] Plaintiff notes that defendant's "oddly . . . now claim that Defendant Taylor was not directing the sexual harassment towards plaintiff, yet that is not what the grievance or grievance appeal responses describe." Resp. 3, ECF 45. Defendants recognize that plaintiff "was provided inconsistent information with respect to . . . Taylor's comment." Mot. Summ. J. 3 n.1, ECF 30. In any event, setting aside whatever debate there might be about who said what and to whom and assuming Taylor made the comment directly to plaintiff, Taylor's comments do not meet the standard for an Eight Amendment claim.

exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons of which we do not approve, but which do not violate the Eighth Amendment.").

Plaintiff's complaint also includes several other allegations about Taylor that pre-date the May 23, 2023 incident, including that Taylor had allegedly "wolf-whistled" at plaintiff, "blew him kisses," and made comments of a sexual nature toward him in December of 2021, and that Taylor had, at some unspecific date that appears to be between December of 2021 and April of 2022 or during "Covid protocol," subjected plaintiff to a strip search. Compl. ¶¶ 21–24, ECF 2.[19] None of these allegations are sufficient to sustain plaintiff's Eighth Amendment claim against Taylor. For one, plaintiff never grieved or made a PREA complaint about any of these previous alleged incidents.[20] The only mention of any previous incident was in the May 2023 Grievance in which plaintiff wrote that he believed Carey's investigation into Taylor's comment was insufficient: "My position is that had Lt. Carey actually investigated the [March 2023 Grievance] and, at minimum even spoken with me, he would have learned that there has been two separate and distinct sexual harrassments by [Taylor] directed at me[.]" Nowhere does plaintiff mention any alleged "strip search"; instead plaintiff specified in appealing the May 2023 Grievance that the "incident on [March 11, 2023] was the second time I was *verbally* sexually harassed by [Taylor], making it 'repeated.' "[21]

The complaint alleges that Taylor made another harassing comment to plaintiff in December of 2021, meaning that the time had long passed for plaintiff to submit a grievance about that comment. Additionally, any passing and generalized reference to past incidents of

---

[19] *See also* Resp. 3, ECF 45 (explaining that the strip-search "happened after the March 2022 shift change").
[20] *See* Robinson Decl. ¶ 16, ECF 33.
[21] Villers Decl., Ex. 8 at 1, ECF 50 (emphasis added).

harassment in the May 2023 grievance is not sufficient to establish that claims about those past incidents were exhausted. *See Renander v. Thomas*, No. 2:19-cv-04760-SRB, 2021 WL 11729469, at *6 (D. Ariz. July 28, 2021), *aff'd,* No. 22-15169, 2023 WL 6366699 (9th Cir. Sept. 29, 2023) (explaining that "[p]roper exhaustion, while not requiring detailed facts or legal theories, requires providing enough specificity to 'alert the prison to the nature of the wrong for which redress is sought,' " and that plaintiff's generalized claim regarding an overall pattern of harassment was not sufficient to establish exhaustion of a claim based on discrete incident) (quoting *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)).

Furthermore, plaintiff filed this suit in February of 2024, meaning that any conduct that occurred prior to February of 2022 is time-barred under the two-year statute of limitations for section 1983 claims. *See Monical v. Jackson Cnty. Sheriff's Dep't*, No. 1:17-cv-00476-YY, 2020 WL 571734, at *5 (D. Or. Feb. 5, 2020) ("In Oregon, the two-year statute of limitations for personal injury actions, O.R.S. § 12.110(1), applies to claims brought under § 1983.") (citing *Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2002)); *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 747 (9th Cir. 2019) (explaining that for section 1983 claims, "discrete acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges because each discrete act starts a new clock for filing charges alleging that act"))(quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113) (simplified).

For all those reasons, defendants are entitled to summary judgment on plaintiff's Eighth Amendment claim against Taylor.

### B.    Defendant Carey

As previously noted, defendants concede that plaintiff has exhausted his Eighth Amendment claim that Carey "fail[ed] to correct [Taylor's] illegal actions." Mot. Summ. J. 9 n.3,

ECF 30. The facts in the record regarding Carey's role in investigating Taylor's conduct as part of plaintiff's PREA report and grievance do not, however, establish an Eighth Amendment violation. To the extent plaintiff asserts that Carey failed to take some action when he learned of Taylor's conduct after-the-fact, that is not sufficient to sustain a claim for supervisory liability under section 1983. *See Moore v. Thurnau*, No. 2:21-cv-00483-YY, 2024 WL 5340463, at *5 (D. Or. Oct. 3, 2024), *report and recommendation adopted sub nom. Moore v. Cain*, No. 2:21-cv-00483-YY, 2025 WL 239093 (D. Or. Jan. 17, 2025) ) ("There is no supervisory liability under section 1983 for officials who learn of past constitutional violations."); *see also Salas v. Nichols*, No. 4:17-cv-00663-JST, 2017 WL 2834061, at *9 (N.D. Cal. June 30, 2017) (dismissing claims against supervisory defendants who merely reviewed post-violation grievances because such evidence only established that the defendants were "on notice regarding alleged past constitutional violations, and not on notice regarding ongoing constitutional violations").

Though plaintiff is plainly dissatisfied with the way Carey conducted the investigation into Taylor's conduct and the result of the investigation, which concluded that Taylor's comment did not constitute sexual harassment, that too is not sufficient to establish an Eighth Amendment violation. The Eighth Amendment requires public officials to "provide humane conditions of confinement[,] . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (simplified). Nevertheless, "[b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' . . . 'only those deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave

to form the basis of an Eighth Amendment violation." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (citations omitted).

The record shows that Carey investigated plaintiff's PREA complaint and grievance regarding Taylor's conduct, and explained the findings of the investigation to plaintiff.[22] There is no Eighth Amendment violation here. *See Jordan,* 986 F.2d at 1525 ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.").

To the extent plaintiff's complaint could be construed as actually asserting a Fourteenth Amendment due process claim against Carey based on the alleged inadequacy of Carey's investigation into Taylor, that too fails as a matter of law. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a prima facie substantive or procedural due process claim, one must, as a threshold matter, identify a liberty or property interest protected by the Constitution." *United States v. Guillen-Cervantes*, 748 F.3d 870, 872–73 (9th Cir. 2014). It is well-established that "prisoners do not have a constitutional right to a specific prison grievance procedure, nor do they have a liberty interest in the grievance process as protected by the Due Process Clause." *Hoge v. Washburn*, No. 2:23-cv-00128-JR, 2024 WL 5320539, at *7 (D. Or. Oct. 28, 2024), *report and recommendation adopted,* 2025 WL 83423 (D. Or. Jan. 13, 2025) (collecting cases); *see also Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional right to a specific grievance procedure."). Thus, plaintiff's claim against Carey, whether based on the Eighth or Fourteenth Amendment, is subject to dismissal on summary judgment.

---

[22] *Id.*, Ex. 6 at 10.

### C.    Other Defendants

Plaintiff also alleges that Frazier, Nooth, Pedro, Sage, Robinson, and Burchard violated the Eighth Amendment because they "fail[ed] to correct Taylor's illgal actions after they were personally made aware and became involved." Compl. ¶ 56, ECF 2. These claims too are subject to summary judgment in defendants' favor. Neither of plaintiff's grievances, nor any of plaintiff's appeal forms, mentioned any conduct by Frazier, Nooth, Pedro, or Sage, and thus those claims are not exhausted.[23] *Ramirez v. Budnik*, No. 5:20-cv-02036-GW-ADS, 2024 WL 1136410, at *4 (C.D. Cal. Mar. 5, 2024), *report and recommendation adopted,* 2024 WL 1361807 (C.D. Cal. Mar. 27, 2024) (citing *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (holding that plaintiff failed to exhaust administrative remedies against two defendants because his grievances did not reference those defendants nor reference the nature of grievance he asserted against them)).

Plaintiff asserts that his failure to exhaust should be excused under O.A.R. 291-109-0210(4)(j), which provides that "[t]he processing of, response to, or late response to grievances, grievance appeals, discrimination complaints, discrimination complaint appeals, or other separate review processes" are not themselves grievable issues under ODOC regulations. Resp. 2, ECF 45. But even assuming, without deciding, that exhaustion could be excused on that basis here, there is no evidence in the record that any of these defendants was personally involved in the incident involving Taylor. *See Jennings v. Roberts*, No. 2:25-cv-00449-SB, 2025 WL 1488501, at *2 (D. Or. May 23, 2025) ("As an initial matter, 'liability under [Section] 1983 must be based on the personal involvement of the defendant.' ") (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)).

---

[23] *See id.* at 1–13; *id.*, Ex. 7 at 1–7.

At best the record shows that defendants Frazier, Nooth, Pedro, Robinson, and Sage were involved in some way in the investigation into plaintiff's complaint about Taylor. As for defendant Burchard, plaintiff mentioned Burchard's involvement in reviewing Carey's investigation of plaintiff's initial complaint against Taylor in the second level appeal form for the first grievance, EOCI-2023-03-017.[24] In the appeal form purportedly related to plaintiff's second grievance, plaintiff alleged that an unnamed EOCI officer or employee "forged Lt. Burchard's signature[.]"[25] It is not clear on what basis plaintiff is asserting that Burchard violated his Eighth Amendment rights. In any event, none of these allegations are sufficient to sustain an Eighth Amendment claim against these defendants for the same reason that such a claim could not succeed against Carey, namely that plaintiff's dissatisfaction with any of these defendants' roles in the investigation into Taylor's conduct does not constitute the "wanton infliction of pain," nor are they sufficient to establish any supervisory liability or any violation of plaintiff's Fourteenth Amendment rights, to the extent the complaint could be broadly read as asserting as much.

## V.     First Amendment Claims

Plaintiff also asserts two First Amendment claims. In Claim 3, plaintiff alleges that Taylor, Burchard, and Carey retaliated against him after he reported Taylor's comment. Compl. ¶ 57, ECF 2. In Claim 4, plaintiff asserts that Sobotta, a grievance coordinator at EOCI, prevented him from appealing his grievances regarding the Taylor incident and the EOCI investigation into it by returning plaintiff's first-level appeal form as "unprocessed." *Id.* ¶ 58.

---

[24] *See id.*, Ex. 6 at 2.
[25] *Id.*, Ex. 8 at 1.

## A.     Retaliation Claims Against Carey, Taylor, and Burchard

The precise nature of the retaliation at issue in Claim 3 is not immediately clear from the complaint, but generally speaking this claim is focused on conduct that occurred after plaintiff filed a grievance and a PREA report about Taylor's March 2023 comment. Plaintiff alleges that on the evening of March 11, 2023, the same day of the Taylor incident and after plaintiff had filed the initial March 2023 Grievance against Taylor, Taylor "sent threatening messages to [p]laintiff through AICs Max Hartzog and Woodruff-McNutty" that Taylor was "coming back to [plaintiff's unit] for [p]laintiff" and that Taylor would "clean [it] out." Compl. ¶ 32, ECF 2. On March 17, 2023, plaintiff spoke to Robinson who said, according to plaintiff, that Taylor "admitted the allegations and that [p]laintiff's allegations are substantiated." *Id.* ¶ 34. On April 8, 2023, plaintiff alleges, Carey "answer[ed] the initial grievance against [Taylor], stating that there was no sexual abuse or sexual harassment." *Id.* ¶ 36. As described above, plaintiff appealed Carey's response to the grievance and on May 12, 2023, plaintiff "finally had a meeting with [Carey]" where plaintiff described his interactions with Taylor. Carey, plaintiff says, "would not change his answer in denying [p]laintiff's allegations" because sexual harassment meant that the conduct "ha[d] to be repeated." *Id.* ¶ 39 (internal quotation marks omitted).

Plaintiff then filed the May 2023 Grievance "against . . . Carey . . . for refusing to accept that . . . Taylor had repeatedly sexually harassed him." *Id.* ¶ 40.[26] On the May 2023 Grievance, plaintiff wrote that Carey "appears to be more concerned with denying and covering up what is supposed to be a zero tolerance issue" and that plaintiff had "experienced retaliation and, although not sexually charged, I've been further harassed by [Taylor] since the misconduct was

---

[26] *See also* Villers Decl., Ex. 7 at 2–3, ECF 34 (May 2023 Grievance).

confirmed."[27] Carey's response to plaintiff's May 2023 Grievance seems to shed some light on the nature of plaintiff's claim of retaliation:

> The reason for the [meeting between plaintiff and Carey] on May 12, 2023, was to assess your report of Retaliation. . . . You reported being taken off the incentive housing waiting list as retaliation. I told you I would investigate this and asked if you had refused incentive housing at any time. You stated you had not, but insisted you told the Assignment Office you would rather have a different unit. Ultimately, you voluntarily elected not to take the Incentive bunk available at the time.
>
> After speaking to the Assignment Office, they stated that you did in fact refuse an incentive housing bunk assignment, so you were removed from the list. It was found that this was not retaliation for your PREA Allegation as the Assignment Office was not aware of the allegation and this is the process for Incentive Housing refusals. If you feel this is in error, please work with the Assignment Office. If you would like added back onto the list, please work with your Counselor.[28]

In attempting to appeal Carey's response, plaintiff focused on the "incentive housing" denial: "If Housing wasn't even aware of the issue . . . then who forged Lt. Burchards's signature? (See attached). It is retaliation because AIC [unintelligible] was called down and spoken to in person for the third time and offered option(s) for Honor Housing. I wasn't given a choice of options, did not decline, I only asked if G-3 was an option then was removed from the list and without anybody from Housing actually speaking directly to me."[29] Plaintiff's response to defendants' currently pending motion also focuses on the "incentive housing" denial as the basis of his retaliation claim: "In the grievance answer, Carey says Housing wasn't aware of the sexual harassment yet . . . Burchard was aware." Resp. 6, ECF 45.

---

[27] Villers Decl., Ex. 7 at 3, ECF 34.
[28] *Id.* at 1.
[29] *Id.*, Ex. 8 at 1–2 (some capitalization and other formatting modified).

In the complaint, plaintiff asserts a retaliation claim against Taylor, Carey, and Burchard, but does not specifically describe any facts regarding the incentive housing issue. Instead, the complaint seems to focus on plaintiff's dissatisfaction with the investigation into Taylor. *See* Compl. ¶¶ 39–52, ECF 2.

The parties first dispute whether plaintiff properly exhausted any retaliation claim against Taylor, Carey, and Burchard. Plaintiff asserts that his failure to exhaust should be excused because the appeal for the May 2023 Grievance was returned to him as "unprocessed." Resp. 2, ECF 45; *see also Williams*, 775 F.3d at 1191 (explaining that a failure to exhaust can be excused if the plaintiff shows "there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him," which can include "showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile").

But even assuming that plaintiff's failure to property exhaust this claim is excused, Taylor, Carey, and Burchard are entitled to summary judgment on plaintiff's claim for retaliation. An inmate's claim for First Amendment retaliation has five elements that the plaintiff must allege: (1) the plaintiff engaged in protected conduct; (2) the defendant took some adverse action against the plaintiff; (3) a causal connection between the protected conduct and adverse action; (4) the adverse action had a chilling effect on the plaintiff's First Amendment rights; and (5) the defendant's "retaliatory action did not advance legitimate goals of the correctional institution[.]" *Watison*, 668 F.3d at 1114.

Plaintiff's complaint does not allege, nor does plaintiff point to any evidence in the record showing, that Taylor or Carey took any adverse action against plaintiff or that there is any causal connection between any alleged adverse action and plaintiff's grievance or PREA report

about Taylor. Plaintiff's complaint and response focus on Carey's role in the investigation of Taylor's comment. *See* Resp. 6, ECF 45 ("Defendant Carey was as ineffective investigating the sexual harassment as he was the retaliation."). But the fact that Carey conducted the investigation and came to a result that plaintiff disagrees with is not an "adverse action" and is not retaliatory. *See Alverto v. Henderling*, No. 2:18-cv-01380-BJR, 2018 WL 7018718, at *2 (W.D. Wash. Oct. 2, 2018), *report and recommendation adopted,* 2019 WL 174674 (W.D. Wash. Jan. 11, 2019) (finding that prison officals "accepted [plaintiff's] grievance [and] investigated the allegations," which is "not adverse action and thus not retaliatory, notwithstanding plaintiff's disagreement with the outcome of the investigation"); *Kyger v. Oregon*, No. 6:07-cv-00481-TC, 2010 WL 5487540, at *8 (D. Or. Dec. 10, 2010), *report and recommendation adopted,* 2010 WL 5487538 (D. Or. Dec. 30, 2010), *aff'd,* 481 F. App'x 307 (9th Cir. 2012) ("A grievance response is not an 'adverse action.' ");

As for Taylor, plaintiff alleges that Taylor had previously harassed him in December of 2021 and sometime in 2021 or 2022. *See* Compl. ¶¶ 21–24, ECF 2. But those events pre-date the protected conduct that plaintiff engaged in by filing grievances in March and May of 2023, and thus there is no causal connection to plaintiff's later protected activity that could support a retaliation claim. Plaintiff makes passing references to "further" harassment by Taylor. For example, the complaint alleges that following plaintiff's first March 2023 Grievance, "Taylor sent threatening messages to [p]laintiff through AICs Max Harzong and Woodruff-McNutty" that Taylor was "coming back to [plaintiff's] unit for [p]laintiff" and that Taylor would "clean [it] out." Compl. ¶ 32, ECF 34. The May 2023 Grievance specifically identified Carey as the subject of the grievance, and includes two pages of details regarding plaintiff's belief that Carey mishandled the investigation into Taylor's comment. At the end, plaintiff writes that he had

"experienced retaliation and, although not sexually charged, I've been further harassed by M. Taylor since the misconduct was confirmed."[30]

None of this is sufficient to sustain a claim for First Amendment retaliation against Taylor. Plaintiff's generalized assertion that Taylor "harassed" him is not specific enough to establish retaliation because it does not identify what Taylor actually said or did, or that any such statement or conduct chilled plaintiff's First Amendment rights. *See Johnson v. Noack*, No. 3:16-cv-00443-SB, 2018 WL 3340876, at *13 (D. Or. July 6, 2018) (finding plaintiff's allegation that a prison official's "false actions and harsh tone of voice toward me was indicative of the same staff harassment that I had been previously subjected to" were not "specific facts demonstrating the existence of genuine issues for trial") (citations omitted); *see also Hairston v. Salazar*, No. 3:22-cv-01800-WQH-KSC, 2023 WL 4054694, at *3 (S.D. Cal. Feb. 2, 2023) (finding plaintiff's allegation that prison officials "threatened [plaintiff] with future retaliation" was "not specific enough to [establish] a retaliation claim because it does not state what actions Defendants threatened to undertake or how those threats or actions chilled his First Amendment rights").

Moreover, even assuming as true plaintiff's allegation that Taylor had "sent a message" to him through other inmates that suggested Taylor would "come back" to plaintiff's unit and "clean [it] out," that is similarly insufficient to sustain a retaliation claim. *See Wray v. Garton*, No. 3:18-cv-01617-SB, 2020 WL 1330234, at *4 (D. Or. Mar. 2, 2020), *report and recommendation adopted,* 2020 WL 1325354 (D. Or. Mar. 18, 2020) ("[N]o reasonable jury could conclude that [a prison official's] vague threat of future rule violations, which never materialized, would chill or silence a person of ordinary firmness from pursuing a grievance[.]") (citing *Woodward v. Afify*, 1:14-cv-00856-RJA-MJR, 2018 WL 9875253, at *11 (W.D.N.Y.

---

[30] Villers Decl., Ex. 7 at 1–3, ECF 34.

Sept. 28, 2018) (holding that non-specific verbal threats in the prison context "do not constitute adverse actions sufficient to make a claim of retaliation"); *Quezada v. Roy*, No. 1:14-cv-04056-CM-KNF, 2015 WL 5970355, at *23 (S.D.N.Y. Oct. 13, 2015) (dismissing First Amendment retaliation claims based on prison officials' verbal harassment and vague threats because the prison officials' "disgusting, offensive and highly unprofessional conduct does not rise to the level of a constitutional tort (which is to say, it is not sufficiently serious to deter a person of ordinary firmness from continuing to exercise his First Amendment rights)").

As for Burchard, whose alleged involvement in the incentive housing issue seems to be the root of plaintiff's retaliation claim, there is no evidence from which a reasonable juror could conclude that Burchard took any adverse action against plaintiff because plaintiff had complained about Taylor. The undisputed evidence in the record shows that plaintiff was eligible for incentive housing beginning in August of 2022.[31] Burchard asserts that on April 7, 2023, plaintiff was "told there was an incentive housing bunk available for him," but plaintiff "chose to decline placement in incentive housing" and was then "removed from the incentive housing list in accordance with EOCI incentive housing list rules."[32] Plaintiff claims he was offered a placement in "G-4, and . . . said he would prefer G-3," and other AICs were offered incentive housing "multiple times." Resp. 6, ECF 45. In any event, there is no evidence that Burchard was involved in the process; plaintiff states that "Burchard was the Assignment Lieutenant" but asserts that a "[n]on-assignment staff member" talked to him about the potential placement in incentive housing. *Id.* Furthermore, even assuming, despite the lack of evidence, that Burchard was involved in plaintiff's removal from the incentive housing list, there is no evidence that

---

[31] Burchard Decl. ¶ 13, ECF 31.
[32] *Id.* ¶¶ 14, 15.

Burchard was aware that plaintiff had made a complaint about Taylor's conduct until at least

April 17, 2023, when Burchard "was assigned by Superintendent David Pedro to investigate the

allegations against Lt. Carey in the initial grievance appeal."[33] Burchard could not have retaliated

against plaintiff for the complaints about Taylor unless Burchard knew that plaintiff had made

them, and there is no evidence of that in the record. *See Wood v. Yordy*, 753 F.3d 899, 905 (9th

Cir. 2014) (affirming summary judgment in favor of prison officials on the plaintiff's First

Amendment retaliation claim because there was "nothing in the record to indicate [the

defendants] even knew about the earlier suit"); *see also Knox v. Castaneda*, No. 3:13-cv-02985-

WQH-RBB, 2018 WL 6649457, at *5 (S.D. Cal. Dec. 18, 2018), *report and recommendation

adopted*, 2019 WL 338913 (S.D. Cal. Jan. 28, 2019) (finding that prison official "did not know

about [the plaintiff's] lawsuit at the time of the search and confiscation of items found in

[p]laintiff's cell" and thus "could not have acted in retaliation for a lawsuit of which he had no

knowledge").

### B.    First Amendment Claim against Sobotta

Claim 4 alleges that Sobotta "violated plaintiff's First Amendment right to petition the

government for redress of grievances" by "preventing [plaintiff] from being able to appeal the

grievance about . . . Carey's illegal actions." Compl. ¶ 58, ECF 2. Sobotta was the grievance

coordinator at EOCI who allegedly "twice chose to refuse to process" plaintiff's initial appeal of

the May 2023 Grievance. *Id.* ¶ 12.

There is no grievance in the record regarding Sobotta, but even setting exhaustion aside,

the allegation that Sobotta improperly declined to process plaintiff's appeal, even if assumed to

be true, is not sufficient to sustain a constitutional claim against Sobotta because "absent any

---

[33] *Id.* ¶¶ 18–19.

facts showing a retaliatory motive," plaintiffs do not have a "separate constitutional right to have [their] grievances processed in any particular manner." *Murillo v. Godfrey*, No. 2:18-cv-02342-JGB-JC, 2023 WL 2825701, at *13 (C.D. Cal. Feb. 21, 2023), *report and recommendation adopted,* 2023 WL 2733374 (C.D. Cal. Mar. 31, 2023) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)); *see also Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014) ("The district court properly dismissed the claims against . . . [the] defendants [who] were only involved in the appeals process. Because inmates lack a separate constitutional entitlement to a specific grievance procedure, these defendants cannot be held liable under § 1983 for denying [the plaintiff's] appeal.") (simplified).

To the extent that plaintiff's complaint could be broadly read as asserting a First Amendment claim regarding access to the courts, such a claim only exists to the extent plaintiff can prove he suffered an "actual injury" or some harm with "respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Douglas v. Stahlnecker*, No. 6:20-cv-00546-IM, 2024 WL 1345684, at *9 (D. Or. Mar. 31, 2024) (quoting *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011)); *see also Taylor v. Randall*, No. 3:23-cv-01147-AN, 2024 WL 2250026, at *6 (D. Or. May 16, 2024) ("To state a claim for a violation of the constitutional right of access to the courts, a plaintiff must show that he suffered an 'actual injury' because a prison official interfered with his 'capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.' ") (quoting *Lewis v. Casey*, 518 U.S. 343, 349, 356 (1996)). Plaintiff has not identified any such injury and thus defendants are entitled to summary judgment on any access-to-courts claim that could be broadly read from plaintiff's complaint.

**ORDER**

Defendants' Motion for Summary Judgment (ECF 30) is granted and this case is

dismissed with prejudice.

DATED June 23, 2025.


_____
/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge